IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDMOND C. BOYLAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL[1], | : | |
| Commissioner of Social Security | : | NO. 18-10357 |

O P I N I O N

JACOB P. HART                                                                                                 DATE: 1/29/20
UNITED STATES MAGISTRATE JUDGE

Edmond Boylan brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As discussed below, Boylan's Request for Review will be denied, and judgment granted in favor of the Commissioner.

I.      Factual and Procedural Background

Boylan was born on April 6, 1952. Record at 141. He completed college. Record at 165 He worked in the past as a vice president of sales for consumer electronics companies. Record at 165. On April 22, 2014, Boylan filed an application for DIB. Record at 141. He alleged disability since April 16, 2014, as a result of coronary artery disease. Record at 164. This was the day after he had a stent placed, following an abnormal stress test. Record at 32, 233.

Boylan's application was denied initially and upon reconsideration. Record at 63, 71. Boylan then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 77.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Pr. 25(d); and see 42 USC §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

A hearing took place in this case before an ALJ on March 27, 2017. Record at 26. On May 26, 217, however, the ALJ issued a written decision denying benefits. Record at 16. The Appeals Council denied Boylan's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Boylan then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.

> If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     The ALJ's Decision and Boylan's Request for Review

The ALJ determined that Boylan suffered from the severe impairments of ischemic heart disease, coronary artery disease with angina; status post-cardiac catheterization with stent placement; and right lower extremity stenosis of the mid to distal SFA (superficial femoral artery). Record at 18. He found that Boylan's hypertension, hyperlipidemia, and status post-surgery of the right knee were not severe impairments. Id. The ALJ found that no impairment, or combination of impairments, met or medically equaled a listed impairment. Id.

The ALJ found that Boylan retained the residual functional capacity ("RFC") to engage in light work, except that he could climb ramps, stairs, ladders, ropes and scaffolds only occasionally, and could balance, stoop, kneel, crouch and crawl only occasionally. Record at 19. In reliance upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Boylan could return to his former work as a vice-president of sales, as it was actually and generally performed. Record at 21. He decided, therefore, that Boylan was not disabled. Id.

In his Request for Review, Boylan argues that the ALJ: (1) erred in finding that his hypertension, hyperlipidemia, and right knee impairment were not severe; (2) failed to consider his obesity; (3) failed to consider the side effects of his medication; (4) failed to properly credit his testimony; and (5) incorrectly evaluated the testimony of the independent consulting physician, Alexander Hoffman, MD, and treating physician Orlando Mills, MD.

3

Additionally, Boylan maintains that the ALJ's determination that he could perform his past relevant work was inconsistent with the medical evidence. He argues that the ALJ failed to take into account his testimony describing the demands of his job.

IV. Discussion

A. The Impairments Found to be Non-Severe

Under the Social Security regulations, an impairment is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities. 20 CFR § 404.1520(a) and (c). "Severity", in this context is not a stringent requirement. It has been called a *de minimis* standard. Kuhn v. Barnhart, Civ. A. No. 02-6873, 2004 WL 414069 at ** 6-7 (E.D. Pa. Mar. 3, 2004); Harper v. Sullivan, Civ. A. No. 89-4272, 1991 WL 24908 at *4 (E.D. Pa. Feb. 25, 1991). Nevertheless, if an impairment does not impose more than a minimal restriction on a person's ability to engage in basic work activities, it must be found non-severe. 20 CFR § § 404.1520 and 404.1521(a).

As above, the ALJ found that Boylan's hypertension, hyperlipidemia and right knee impairment were not severe. Record at 18. However, he did not support this conclusion with any discussion. Id. Boylan states, therefore, that the ALJ "failed to consider all of the medical records and the specific findings regarding these impairments before [he] made his decision."

However, Boylan has not even attempted to demonstrate that any of these impairments significantly limited his ability to work. Nor is it evident from the record. On the contrary, Matt Bach, MD, Boylan's treating cardiologist wrote on September 9, 2015:

> Overall, the patent has been doing fairly well. The hypertension has been fairly well controlled on the patient's current medications. The patient's cholesterol, LDL, and triglyceride levels have been fairly well controlled on the patient's current medication regimen.

Record at 362. Similar evaluations appeared on treatment notes from April 15, 2015, and December 21, 2016. Record at 343, 369.

Further, the earliest treatment notes from Dr. Mills, Boylan's general practitioner, reveal that Boylan had hypertension and high cholesterol as early as 2007. Record at 256. Since Boylan did not stop working until 2013, he was clearly able to work with these conditions. Moreover, when Boylan stopped working, it was not for a medical reason, but because of a "disagreement with the owner of the company." Record at 164.

As for Boylan's knee injury, it appears that he underwent two surgeries sometime in the 1970s. Record at 309. Thus, the entirety of Boylan's work history occurred when he was status post-knee surgery. Boylan testified at his hearing that his treating orthopedist recommended a knee implant. Record at 37. However, the record does not contain any notes from an orthopedist.

As a whole, therefore, Boylan has not shown that the ALJ erred in finding these impairments not to have been severe. If the ALJ erred in failing to discuss his basis for his conclusions, therefore, it was a harmless error. Remand is not required where it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546 (3d Cir. 2005).

B.    Obesity

Boylan was noted on October 1, 2016 to be almost 5' 9", and to weigh 208.5 pounds. Record at 384. His BMI was 31.8. Id. He was therefore categorizable as obese. SSR 02-1p, 2002 WL 34686281 (2002). The ALJ, however, did not mention Boylan's obesity in his decision. This was error.

An ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, at step three of the sequential analysis, and at every subsequent step. Diaz v. Commissioner of Social Security, 577 F.3d 500, 504 (3d Cir. 2009), citing SSR 02-1p.

Here again, however, the ALJ's error does not require remand. In Mack v. Commissioner of Social Security, Civ. A. No. 15-3470, 2017 WL 1033774 (D.N.J. Mar. 16, 2017), the District of New Jersey considered the requirements of Diaz. The Honorable Claire Cecchi determined that, although an ALJ must meaningfully consider the effect of a claimant's obesity, it is still the claimant's duty to provide specific medical evidence indicating how his obesity affects his work-related limitations. 2017 WL 1033774 at *6. She cited Social Security Ruling 02-01p, pertaining to obesity, which states that an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments." Id.

The Mack decision also looked to Rutherford, cited above. There, the Court of Appeals for the Third Circuit held that remand was not warranted, even where the ALJ failed to mention obesity at all, where the plaintiff did not specify how his weight impaired his ability to work. Id., citing 399 F.3d at 553. This case presents the same situation. It is true that the ALJ failed to mention Boylan's obesity; however, Boylan did not assert obesity as an impairment, and – as in Rutherford – did not mention it in his testimony, "even when asked directly … to describe [his] impairments." 399 F.3d at 553; Record at 31-37.

Also relevant is Santini v. Commissioner of Social Security, Civ. A. No. 05-5348, 2009 WL 3380319 (D.N.J. Oct. 15, 2009), *aff'd* 413 Fed. Appx. 517 (3d Cir. 2011), in which it was determined that Diaz did not compel remand where the claimant did not point to any medical evidence that her obesity, either alone or in combination with another condition, impaired her

6

ability to perform her past relevant work.  The <u>Santini</u> court wrote that the ALJ was justified in finding that the claimant could return to her prior work at stage four of the sequential evaluation:

> The Ruling [SSR 02-01p] observes that obesity 'can cause limitation of function.'  The problem for Plaintiff, however, is that she has pointed to no medical evidence of record that her obesity *has* caused a substantial or relevant work-related limitation of her functioning.  Absent that, the ALJ could not have come to any other conclusion at step 4.

2009 WL 3380319 at *6.

Here, as the Commissioner has pointed out, the medical record of evidence suggests that Boylan's obesity did not prevent him from engaging in light work.  Independent consulting physician Dr. Hoffman noted that Boylan was "slightly obese", but also reported that he walked normally, had no trouble getting on or off the examination table, had full flexion at the knee with no swelling or crepitus, and could balance on either leg, do a deep knee bend, and walk on his heels and toes.  Record at 250-251.  Therefore, there is no basis for a remand.

C.   Side Effects of Medication

At the hearing, Boylan's counsel elicited the names of his medications, and then asked: "Do you experience side effects from these medications?"  Record at 34.  Boylan replied: "Occasionally drowsiness.  I mean, I don't pass out or fall asleep but I'm tired."  <u>Id</u>.  Boylan argues that the ALJ ran afoul of SSR 03-2p in failing to consider in his decision his side effects from medication.

The ALJ could very reasonably have believed that Boylan's testimony did not raise an issue regarding medication side effects.  A claim of "occasional drowsiness" does very little to distinguish Boylan from the general human condition.  In the absence of any other relevant evidence, such as complaints to his physicians about oversedation, it is not possible to conclude that the ALJ erred in this regard.

D.      The ALJ's Treatment of Boylan's Testimony

At the hearing, Boylan testified briefly that he took an anti-inflammatory to address his knee pain. Record at 37-8. He also testified that he would stop driving if his knee was bothering him, although generally his driving was unlimited. Record at 38. He further testified to chest pressure and shortness of breath on exertion, and when under emotional stress, caused by his cardiac disease. Record at 33, 37.

Boylan maintains that the ALJ inadequately assessed his testimony as to his subjective symptoms, and failed to "apply the correct legal standard." Boylan's Brief at 15. However, the ALJ explicitly followed the two-step evaluation process outlined in the regulations. 20 CFR §§404.1520(c), 404.1522. He determined that Boylan had medically determinable impairments which could reasonably be expected to cause his alleged symptoms, but that his representations as to the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the other evidence of record. Record at 20.

The ALJ followed this determination with a discussion of the medical treatment notes, the medical opinion evidence, and Boylan's own representations in the Function Report he completed. Record at 20-21. In the Function Report, Boylan indicated that his impairments had no effect on his ability to take care of his personal needs. Record at 179. He attended church on Sundays, and walked for exercise. Record at 178. He could also prepare his own meals daily, do his own laundry, shop for his own groceries and clothing, and leave the house daily. Record at 180, 181. The ALJ noted this in his decision. Record at 20.

It is not, therefore, evident how the ALJ's assessment of Boylan's testimony was defective. Boylan has not made any real argument in this regard. Consequently, he has not shown he is entitled to relief on this basis.

E.        The Medical Opinion Evidence

In evaluating the medical evidence, the ALJ took note of the findings made in the consultative examination report by Dr. Hoffman, several of which were mentioned above: Boylan had a normal gait, and did not use an assistive device; he did not have any difficulty transferring from a chair to the examination table; he could walk on his heels and toes, and could balance on either leg. Record at 20, 250-251. The ALJ also noted that Boylan told Dr. Hoffman that he was prescribed nitroglycerine, but had not needed to use it. Record at 20, 250. Boylan also told Dr. Hoffman that he had been doing well since his heart surgery. Id. According to Dr. Hoffman, Boylan "ha[d] not had any chest pain." Id.

The ALJ called Dr. Hoffman's report "largely negative." Record at 20. Boylan claims that this was inaccurate. He cites portions of Dr. Hoffman's report which describe his heart surgery and his medications. He also noted that Dr. Hoffman found that he had a "grade 1 ejection murmur at the left sternal border", diminished pulses, and a positive straight leg raising test. Record at 251. He also points out that Dr. Hoffman reported that an EKG showed left ventricular hypertrophy. Record at 251.

These quotations are somewhat edited. In fact, Dr. Hoffman called Boylan's heart murmur "very faint" and "*less than* grade 1." Record at 251. Further, Dr. Hoffman called Boylan's EKG only "borderline abnormal." Record at 251. The positive straight leg raising test may indicate a herniated disc in the lower spine. Http://ncbi.nlm.nih.gov/books/NBK539717/. However, Boylan has not complained of back pain. In any event, whatever Boylan's medications and test results, his actual physical functioning was described by Dr. Hoffman as generally normal. It was, in this sense, a "largely negative" report.

9

Boylan also argues that the ALJ should have fully credited the report of his general practitioner, Dr. Mills. Record at 20. The ALJ did not accept Dr. Mills' findings that Boylan could only stand and/or walk for two hours in an eight-hour workday, that he needed to elevate his legs when sitting, or that he would be absent from work because of his impairments four days or more per month. Record at 20, 376, 377.

The ALJ wrote that these findings were inconsistent with the medical record as a whole, and were not supported by Dr. Mills' own treatment notes. Record at 20. Indeed, Dr. Mills indicated on a treatment note from December, 2016, that Boylan denied chest pain, shortness of breath, or dizziness on exertion. Record at 378. The same observations were made in September, and October, 2016, and in April, 2015. Record at 380, 384, 388. Also in December, 2016, Boylan was: "Not having any problems with current treatment and meds." Record at 378.

In September, 2016, Boylan's knee was sore and swollen, but medication decreased both symptoms. Id. Although Boylan described some chest tightness on exertion at an April, 2016, appointment, he also told Dr. Mills that he could walk a mile and a half with no chest tightness, pressure or pain. Record at 382. This was an improvement from July, 2015, when Boylan did describe some chest tightness at the end of his daily walk, and decreased stamina. Record at 386.

Boylan argues that Dr. Mills' findings were supported by the reports of Jose Rabelo, MD, and David Tiersten, MD, agency physicians who examined his records initially and upon reconsideration, respectively. However, both Dr. Rabelo and Dr. Tiersten found that Boylan remained capable of light work and could return to his past relevant work as it was actually performed. Record at 48, 49, 59, 60. Both doctors also found he could stand and/or walk for six hours in an eight-hour workday. Record at 47, 58. Therefore, Boylan has not shown error in the ALJ' treatment of Dr. Mills' evidence.

F. <u>Boylan's Ability to Perform his Past Relevant Work</u>

  Boylan's final argument is that the ALJ failed to consider his testimony that his past relevant work as a vice president of sales for a consumer electronics company imposed stressful demands, including considerable travel, and only two hours per day sitting down. Record at 31, 32. He also supervised more than 25 people, and was responsible for hiring and firing employees. Record at 175. Boylan testified that he felt pressure in his chest when he was angry or "felt stressed about an issue." Record at 37.

  Nevertheless, Boylan also indicated in a Functional Report dated May 6, 214, that he handled both stress and changes in routine "fairly well." Record at 184. In a second Functional Report, dated July 23, 2014, Boylan responded to the question about how he handled stress, by writing: "OK, as I've had to deal with stress throughout my sales career." Record at 192. Also, in his February 23, 2017, report, Dr. Mills indicated that Boylan only experienced chest pressure once per month. Record at 375.

  Further, the ALJ elicited evidence from a vocational expert about the exertional level of Boylan's prior relevant work, as it was usually performed, and as it was performed by him. Record at 39. The vocational expert testified that the job of a vice president of sales was generally sedentary, but that, as performed, Boylan's past work was at the light exertional level because of the travel involved. <u>Id</u>. Thus, the ALJ did not ignore the demands of Boylan's job as he actually performed it.

  Boylan's counsel declined to question the vocational expert when given the opportunity. Record at 40. The ALJ then asked Boylan: "Is there anything you think we've missed or didn't address as far as your conditions?" <u>Id</u>. Boylan replied: "No." <u>Id</u>. As a whole, therefore, Boylan has not shown that the ALJ handled the issue of his prior work unfairly.

V.      Conclusion

In accordance with the above discussion, I conclude that the decision of the Appeals Council must be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE